(13 App. Div. 404.)

### PEOPLE ex rel. FITZGIBBONS v. ROOSEVELT et al.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

1. MUNICIPAL CORPORATIONS—POLICE COMMISSIONERS—TRIAL OF OFFICER.
   The findings of police commissioners on the trial of relator (a patrolman) for conduct unbecoming an officer will not be interfered with, where the roundsman making the charge testified that he noticed something in relator's blouse in the shape of a bottle, and asked him what he had there; that relator refused to answer, and, when ordered to report to the station house, refused to go; that, when he caught hold of relator to take him to the station house, relator drew his revolver, and threatened him; and this testimony was partially corroborated by another officer, and by the sergeant at the police station, though contradicted in detail by relator. Van Brunt, P. J., and O'Brien, J., dissenting.

2. SAME—ADMISSIBILITY OF POLICEMAN'S RECORD ON HIS TRIAL.
   The record of an officer may be resorted to, in a trial before police commissioners, only for the purpose of affecting the extent of the punishment to be

visited on him in the event of conviction on the specific charge on which he is being tried.

Certiorari by John Fitzgibbons to review the action of Theodore Roosevelt and others, police commissioners, in dismissing the relator from the police force. Dismissed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward H. Hawke, Jr., for relator.
Theodore Connoly, for respondents.

INGRAHAM, J. The relator was charged with conduct unbecoming an officer, the first specification being that, when standing in the public street, and when asked by a roundsman what he had in his blouse pocket, he refused to explain, and, when ordered to report to the station house, he refused to do so; and the second specification being that, when the roundsman took hold of him (the relator) to bring him to the station house, the relator drew his revolver in a threatening manner, and refused to go. He was not charged with drinking whisky while on duty, but simply with conduct unbecoming an officer, because of his refusing to comply with the orders of his superior officer.

To support these charges the roundsman was sworn, whose testimony, if it is believed, fully supported the charge. He testified that he went up to the relator, noticed something in the breast pocket of his blouse the shape of a bottle, asked him what he had there, the relator refused to answer, the roundsman felt it, and discovered that it was a bottle. The roundsman then asked the relator to show it to him, and the relator refused, whereupon the roundsman ordered the relator to report to the station house, and explain there, which he refused to do. Upon Officer Campbell coming up, the relator pulled his revolver out of the cover, when the roundsman said, "You mean that for me?" The relator answered, "Yes." Upon that Officer Campbell stepped between them, and said he would take the relator to the station house, which he did. Sergeant Ryan testified that he was on duty at the station house when the relator and the roundsman came in. At that time the roundsman made a statement to the sergeant which was substantially the same as that testified to by him upon the trial, except in regard to some further details as to the relator throwing away the bottle on his way to the station house, and the roundsman picking up a piece of it, and discovering that it had contained whisky.

Officer Campbell was called, and testified that he was with the relator on the night in question; that he did not see him drinking from a bottle; that he (Campbell) did not drink out of any bottle that morning; that the relator took his revolver from his pocket. Campbell also testified that the roundsman in the station house did charge the relator with having thrown the bottle away, and that he charged the relator in the station house with a "felonious assault." So far as this charge is concerned, the testimony of Campbell tends to support the testimony of the roundsman.

The credibility of the witnesses, when there is a disagreement, is for the commissioners, and not for the court; and how it can be said that, upon this evidence, the finding sustaining this charge is against the weight of evidence, it is difficult for me to see. It is true that the roundsman testified to some other facts, such as seeing the relator and Campbell drinking together, and as to the relator's throwing away the bottle of whisky, and picking up a piece of the bottle, which was unsupported by any evidence, and denied by both the relator and Campbell. But, assuming that the roundsman's testimony as to these facts is not to be believed, the charge and specifications still remain, and they were supported by a preponderance of evidence before the commissioners. It will hardly be denied that a refusal of an officer on post to produce a bottle in his possession which his superior officer suspects contains whisky, his refusal to go to the station house when ordered to by his superior officer, and when the officer attempted to take him to the station house pulling out a revolver, saying it was for the superior officer, is a serious breach of discipline, and such conduct as would justify the commissioners in removing the offender from the force. These facts were certainly testified to by the roundsman, and his statement was not denied by any one except by the relator.

The record of the relator was also in evidence before the commissioners, and, being in evidence, they were entitled to consider it upon the question of his removal. This record shows a series of convictions for conversing in the streets while on duty, absence from duty, in a liquor store while in uniform, using profane and insulting language to a superior officer, in each year that he has been on the force. We think that, upon this testimony, the commissioners were entirely justified in finding the officer guilty, and that their proceedings should be sustained.

The writ is, therefore, dismissed, with costs.

WILLIAMS and PATTERSON, JJ., concur.

O'BRIEN, J. (dissenting). The complaint was of conduct unbecoming an officer, the specifications being:   .

"First. Said patrolman, John Fitzgibbons, was standing in front of No. 77 South street, and when asked what he had in his blouse pocket he refused to explain, and when ordered to report to the First precinct station house he refused to do so. Second. When Roundsman John Budds took hold of him, * * * to bring him to the * * * station house, the said patrolman drew his revolver in a threatening manner, and refused to go * * * during his tour of patrol duty."

The testimony of the roundsman was:

"When I got through asking the officer about the conversation case [conversation with another officer for 12 minutes], I noticed in his breast pocket of his blouse the shape of a bottle. I asked him what he had there. He said, 'Nothing.' I felt it. It was a bottle. I said, 'This is a bottle of whisky.' He said, 'No.' I said, 'Show it to me.' He would not. I said, 'Report it to the station house, and explain it there.' He refused to. I called Officer Campbell to assist me. While Campbell was coming to me, he [defendant] pulled his revolver out of the cover. I said, 'You mean that for me?' 'Yes.' Officer Campbell stepped between us, and he said to me, 'I will take him to the station house,' and I said 'All right.' They walked to the middle of South street. He pulled the bottle out, and threw it over-

board. I went to the station house, and laid the case before Sergeant Ryan, who was at the desk. He reported it to another sergeant, who ordered me to make a complaint. I saw the relator fling the bottle overboard, and it broke on the way to the river by hitting a hogshead. I smelt the bottle. It smelt of whisky. I picked up a portion of the bottle. That is why I considered it was a bottle of whisky. That is what I smelled of. It was very fresh. The place was wet where it had broke. The hogshead was wet. It smelt strong. He pulled his revolver on me in a threatening manner. He took it out of the case. Officer Campbell stepped between us. He told me he was going to use it. He held it in his hand. He pulled the pistol out of his pocket in this manner. He pulled off the cover. Officer Campbell got between us. He held it with the muzzle pointed toward me. We were standing face to face."

Unless this statement is shown to be untrue, there was ample justification for removing relator, the offenses thus detailed being serious. If, on the other hand, the roundsman has cast doubt on his own credibility by other and inconsistent versions, or his story is shown to be highly improbable, then, if contradicted by two witnesses besides relator, it would be violating all rules as to the weight of evidence to accept the roundsman's version, and reject all the rest. If, upon charges, relator is entitled to a trial, and if such trial confers any substantial right upon an accused, he should receive the advantage flowing from a successful defense against false or malicious charges.

That the roundsman seized and elaborated on the occurrence, of that night, of the officer's engaging in conversation with another officer for 12 minutes,—a trivial matter when compared with the offenses attempted to be supported on the trial,—becomes manifest when we take his version of the same occurrence as given in the station house, and contrast it with that given by the three other witnesses. Thus Sergeant Ryan, whom it is admitted is disinterested, tells what occurred at the station house when the relator was brought there by Officer Campbell, who corroborates the sergeant. This testimony is in direct conflict with that given by the roundsman, and shows, not only the inherent improbability of the roundsman's story given on the trial, but it is entirely different from the statement made when the relator was brought to the station house. According to the sergeant, the roundsman brought the relator and Campbell to the station house, and said he had timed them 12 minutes in conversation; that he accused them of it, and they denied it; that he (the roundsman) saw them drinking out of a bottle, and went to them, and asked the relator what he had in his pocket; that the relator put the bottle back, and said he had no bottle in his pocket; and he (the roundsman) said, "Yes, you have," and went to take hold of Officer Fitzgibbons. The sergeant further testified: "I asked Officer Fitzgibbons, and he denied it. He said, 'My hip pocket, a hole was in it; if I put my pistol in, it would fall through to my leg; no place but the breast pocket in the blouse to carry it.' I asked Officer Campbell, and he made the same statement as Fitzgibbons." That the statement that the roundsman told the sergeant that he saw the officers drinking from the bottle was not made while they were present, but was after they had gone away. And it appears that neither at the station house nor at any other time did the roundsman ever speak of

the bottle having been thrown towards the river while they were on the way to the station house, nor about his picking up part of the bottle. Thus it will be seen that the charge at the station house was that the relator was engaged in conversation for 12 minutes, and that he pulled out his revolver.

As the matter of the conversation was not relied upon at the trial, we may dismiss it, and consider the evidence bearing upon the question of the relator's having taken his pistol out of the cover, and in a threatening manner stated that he would use it on the roundsman. The roundsman states that, when he accused the relator of having the bottle in his pocket, the relator denied it, and that he then proceeded to take hold of it; and, although the relator testified that, in taking hold of him, he tore the buttons off his blouse, and threw him on the ground, the roundsman says that all he did was to take hold of him, when the relator drew the revolver from the case. This testimony is explained by both the relator and Campbell,—that the relator did not draw his revolver in a threatening manner, but that, when the roundsman insisted that he had a bottle in his inside blouse pocket, he took out the revolver, which was in a case in that pocket, and which he carried in that position because there was a hole in his hip pocket, where the pistol should have been carried. This is entirely inconsistent with what occurred in the station house, because, when the roundsman again accused him, not of throwing the bottle away, but of having a bottle in his pocket, the relator again, to disprove that charge, called attention to the fact of having a hole in his hip pocket. He put his hand in the inside pocket of his blouse, where the roundsman charged that he had a bottle, and took therefrom the revolver in its case. The roundsman, seeing that something in addition to his statement at the station house was required, waited until the trial to elaborate upon the presence of the bottle by adding the fact that it was thrown away, and that he picked up a portion of it. And yet, knowing the importance of this testimony, he did not keep the piece of bottle, nor have it for presentation upon the trial.

Here is a case where the testimony of the relator is sustained by that of the other officer and the sergeant upon all substantial points now in controversy,—as to the drawing of the revolver in a threatening manner, and as to having possession of the bottle of whisky. And yet, notwithstanding the inconsistency and improbability of the roundsman's version on the trial, as contrasted with the statement made by him to the sergeant at the station house, such statement is taken as true as against the three witnesses testifying directly to the contrary. We have frequently said that we would not interfere in the determination of the commissioners in any case where there was a conflict of evidence, or where there was sufficient evidence to sustain their conclusion. But there cannot be the slightest question that, if a jury had drawn from such evidence, rebutted as it was, an inference of guilt, it would have been promptly set aside, because the clear preponderance was on the other side. If we accord to the decision of the commissioners greater weight, and

invest them with greater discretion in the determination of facts than should be given to the verdict of a jury, and eliminate the question of the preponderance of evidence, it would still leave a case where the only evidence upon which the conviction rests comes from a witness who is not only shown to have told an uncorroborated and improbable and inconsistent story, but who, by elaboration, has attempted to torture into an offense against police discipline, and a felonious assault, an incident which, as shown by three witnesses, was perfectly natural and harmless, viz. that the relator, instead of carrying his revolver in the case in his hip pocket, had, by reason of a hole therein, placed it in his inside blouse pocket, and the roundsman, upon suspicion that it was a bottle of whisky, not only insisted upon searching the relator upon the street, but, when this was refused, and the relator, to prove that it was not a bottle, exhibited his revolver, he makes that the basis of a charge that the relator opened the case, and took out the revolver, and in a threatening manner pointed it towards him,—an act which, if true, would have been a most serious offense.

Unless, therefore, we are to say that, upon a charge being made of conduct unbecoming an officer, the commissioners are not to be bound by any rules of evidence, and upon a statement inherently improbable and uncorroborated, which is in direct conflict with that of three witnesses, one of whom, at least,—the sergeant,—is entirely disinterested, this conviction should not stand. If a right to a trial which may result in a dismissal is to confer any substantial benefit upon the accused, it must be entered upon and conducted, and a determination reached, with some regard to the principles applicable to evidence and rules of law. Otherwise, it must degenerate, as it seems to us to have done in this case, into a delusion and a snare. For, as observed, if, as here, charges made and supported upon a trial by unreliable and untrustworthy evidence, prompted, manifestly, by ill will on the part of the accuser, are to be regarded as sufficient to justify a conviction and a dismissal, even though they are shown to be untrue by three other witnesses, then the right given to one accused to disprove the charge is a mere mockery. The charges themselves were serious, and, if proven, should result in the relator's dismissal. But, upon our conclusion that the accuser was shown to be not only untruthful, but to have been overborne by the relator's witnesses, we think it would be going further than, under the law, we should, to uphold the determination of the commissioners. For not only would the dismissal under such circumstances be arbitrary, but the relator's appeal, like his trial, would confer upon him no substantial right. If, upon such a record, a conviction can be supported, then an accused may well waive a trial, and abandon an appeal, because under neither can he secure, according to rules of law, either right or justice.

We have not overlooked the record of the relator, which, however, is not to be resorted to except for the purpose of affecting the extent of the punishment to be visited in the event of a conviction for

the specific offense. Where the specific accusation, therefore, is unsupported, the relator's record is not involved, and has no weight or bearing upon the question of conviction. This not being a case, therefore, of conflicting evidence, which it is the duty of the commissioners to resolve, and with which we should not interfere, but of a conviction based on insufficient and untrustworthy evidence, it should not be permitted to stand.

We think, therefore, that the proceedings of the commissioners should be annulled, and the relator reinstated, with costs.

VAN BRUNT, P. J., concurs.