CLARENCE A. FRONSDAHL, Appellee, v. CIVIL SERVICE COMMISSION OF DES MOINES et al., Appellants.

**MUNICIPAL CORPORATIONS:** Civil Service Procedure and Certiorari. The discharge of public officers who are subject to civil service regulations, and appeals by the discharged officer to the civil service commission, are governed by the following general principles:

1. The discharging officer may and should act on credible information of misconduct, even though the misconduct does not constitute a crime.

2. On appeal by the discharged officer to the civil service commission, the discharging officer may (and perhaps should) disclose the grounds on which he acted.

3. The civil service commission, on the trial of the appeal, may receive *hearsay* evidence.

4. The discharged officer, on appeal to the civil service commission, may not reserve his defensive and explanatory testimony, and thereafter employ it for the first time on hearing on certiorari.

**MUNICIPAL CORPORATIONS:** Civil Service Regulations—Intoxication. Intoxication of an officer subject to civil service regulations is ample ground for his discharge.

**CERTIORARI:** Scope of Writ and Evidence Receivable. On certiorari to review the action of a civil service commission in affirming the discharge of an officer subject to its jurisdiction, no evidence is receivable unless it bears on the one narrow

issue whether the commission acted illegally, or beyond its jurisdiction. It follows that the accused officer may not withhold his exculpatory evidence from the commission and introduce it for the first time on hearing on certiorari.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

NOVEMBER 23, 1920.

THIS is an appeal from the judgment of the district court in a certiorari proceeding, whereby an order of the civil service commission of the city of Des Moines, confirming the discharge of a policeman, was annulled. From the judgment, the defendants have appealed.—*Reversed and remanded.*

*C. W. Lyon, E. J. Frisk, C. A. Weaver,* and *Russell Jordan,* for appellants.

*Parsons & Mills,* for appellee.

EVANS, J.—The plaintiff was a policeman in the city of Des Moines. On February 2, 1920, the chief of police charged him with conduct unbecoming an officer, and discharged him as a policeman. On February 4th, such discharge was approved by the superintendent of the department of public safety. Thereupon, the plaintiff appealed to the civil service commission. In support of his action in discharging the plaintiff, the chief of police filed with the civil cervice commission the following specifications:

1. MUNICIPAL CORPORATIONS: civil service procedure and certiorari.

"Clarence A. Fronsdahl was discharged from this department as the result of an investigation which conclusively convinced the public safety officials that he was guilty of the unlawful entering of buildings on his patrol beat, and taking and carrying away, with intent to steal the same, goods and merchandise.

"The information which led to this investigation was furnished by Mrs. M. I. Black, the wife of Earl Black, at that time a police officer, and acquaintance and intimate of Clarence A. Fronsdahl.

"Mrs. Black reported to the Federal authorities that her husband was bringing home various articles of merchandise which he claimed were given him, and at other times would give no satisfactory explanation as to how said goods were obtained.

"Mrs. Black further testified concerning conversations which she had heard between her husband and Fronsdahl, all of which tended to confirm her suspicions.

"Following this statement of facts by Mrs. Black before the Federal authorities, and after the case had been laid before the Des Moines police department, Black and Fronsdahl were both placed under arrest. The homes of both men were searched, and quantities of goods and merchandise, consisting of candy, cigars, cigarettes, shoes, and barber shop supplies, were taken therefrom, and are now in the hands of the police department.

"On the ..... day of February, 1920, Earl Black committed suicide, by shooting himself in the head in his own home. This occurred before opportunity was afforded to give Black a hearing.

"Upon this record, I discharged Clarence A. Fronsdahl from the department, and my action was approved by Ben Woolgar, superintendent of public safety, on February 4, 1920.

"In the latter part of the year 1919, Clarence A. Fronsdahl was suspended for a period of 30 days for drunkenness.

"It is upon this record that my action is based, in causing the discharge of this man from the force.

"As to the truth of these allegations, I challenge the fullest possible investigation at the hands of the civil service commission."

After a hearing had upon these specifications, the civil service commission sustained the order of discharge, on

the ground that, from the entire record of the plaintiff, "he is not a suitable man to be a police officer." Plaintiff sued out a writ of certiorari, attacking the jurisdiction of the civil service commission to make its finding. This writ was sustained on hearing, and the proceedings were annulled.

·In support of such order of annulment, the appellee contends here that the order of the civil service commission had no support in any competent evidence, and that all the· evidence that was heard by the civil service commission was hearsay only.

Whether it could be competent in any case for a civil service commission to sustain a discharge wholly upon hearsay evidence, we shall have no occasion to determine. Nor do we have any doubt that hearsay evidence may be admissible before such commission. The tribunal is an administrative one. In an appeal to the commission from an order of discharge by the chief of police, it is permissible to, if not incumbent upon, the chief of police to disclose the grounds upon which he acted. This would ordinarily involve information received by him. Credible information received by the chief of police, implicating members of the force in improper· conduct, imposes upon the chief the duty of investigation and of action. It is not requisite that he should have before him competent evidence, in a technical sense, of the criminal guilt of a policeman, in order to justify an order of removal. The good of the public service is the criterion, and this may be seriously impaired by conduct less than crime, and such conduct may be proved by evidence insufficient to convict of crime. In the investigation made by the chief of police, involving Fronsdahl and Black, the first information came to the chief of police from a special agent of the Federal government. The sources of this information were the wife and the father-in-law of Policeman Black. A search warrant was issued, and the homes of both policemen were searched. Neither policeman was at home, at the time of such search. The goods described in the specifications

above quoted were found in both homes. Both policemen
were then arrested. A few hours later, Black committed
suicide. There was evidence tending to show co-operation
or conspiracy between the two policemen in the use of a
bunch of keys. Mrs. Black was called as a witness before
the commission. She was a very reluctant witness at that
time. She refused or failed to answer many important
questions. Much that she had told the police officer pre-
viously was left unsaid upon the witness stand. Her
widowhood in its tragic setting commanded the tenderest
consideration of the commission, and no pressure of com-
pulsion was attempted. The testimony of the father-in-law
was abundant to implicate Black. Mrs. Black did testify
as follows:

"Q. Do you remember the circumstance of Mr. Frons-
dahl coming home to your place and asking for a key?
A. Yes, sir. Q. Do you know when that was? A. Dur-
ing the time he was suspended. Q. Did you hear the con-
versation between the two men? A. Partly. Q. Please
tell the commission what the conversation was. A. I
don't remember the exact words, but it was to the effect
that he wanted a certain key. Q. Did he ask you for the
key? A. He asked Mr. Black for the key. Q. Did Mr.
Black get it for him, or did he show him a bunch of keys
and he took one from the ring? (No answer.) * * * Q.
What key was it that Fronsdahl took? Was it from a
large bunch of keys? A. I don't know. Q. Did you see
the keys? A. Yes, sir, I didn't see the one key; I just
saw the bunch. I didn't see the one he took. Q. Was this
a key that your husband had a long time, or not? A. Yes."

The time of this occurrence was fixed by her as "during
the time he was suspended." According to other evidence,
this suspension occurred about a month before. The hear-
say evidence complained of was given mainly by the chief
of police, as follows:

"She told about her husband, Earl, and Fronsdahl get-
ting stuff, and the conversations she had heard between
her husband and Fronsdahl, and remember when she said

she saw them making keys to get into stores with. From their conversations, that was what they were doing, and she saw them working on the keys. She said another place upon Mulberry Street they talked about. Some restaurant man said he hated to see a 'damn' policeman coming; they were all dead beats. They laughed at being pulled that night, and raided the place. They brought half of it to the house,—butter, eggs, etc.,—and that was what caused her to complain to the authorities about it. 'I cannot stand to see these little girls of mine eat stolen stuff;' and she told me she said to her husband, 'I will go down to the police station and tell about it.' 'They will laugh about it,—you won't get anywheres.' That is the reason she went to the Federal authorities. Q. Did you have any other conversation? A. She said, the morning it was stolen, about two weeks ago, it snowed, and they walked home, and carried some stuff, and she said Earl, her husband, said, 'I had a hell of a time carrying my stuff home. Whitey had a gunny sack to carry his stuff in.' She said they had some shoes and quite a bunch of stuff; made quite a gunny sack full. She said it was going on about two months that they had been bringing home stuff. She said it was about two months. * * * She told me that day about Fronsdahl coming to the house. He came over for a key to one of the stores. Fronsdahl was under suspension at the time."

It was shown that Fronsdahl was not a user of tobacco. The goods taken on search warrant of his home comprised a large quantity of cigarettes and tobacco, the former being in cartons.

The hearsay evidence herein set forth disclosed information which the chief of police had no right to ignore, or to conceal from the civil service commission. This information and the sources of it were of such a nature as to call for a denial or an explanation from the plaintiff. He chose to stand silent. We think this was a circumstance that required consideration by the commission, and that it was permissible to give to it the force of substantive evidence.

The criminal statute which not only lays upon the State the burden of proof, but forbids consideration by the jury of the silence of the defendant, is not applicable, if for no other reason than that the finding of the commission did not purport to declare the plaintiff guilty of any crime. Nor was it incumbent upon the commission to so find.

If the commission had found the evidence introduced before it insufficient to justify a discharge on the more serious ground of looting stores, it was still confronted with the undisputed fact that the plaintiff had only recently been suspended for intoxication. It is earnestly urged in argument for the appellee that there was no evidence before the commission of the fact of such suspension. We find that Mrs. Black fixed the time of the transaction concerning the keys as "during the time he was suspended." The chief of police testified: "He was suspended for intoxication from December 8th to January 8th."

2. MUNICIPAL CORPORATIONS : civil service regulations : intoxication.

We see no room, therefore, for the contention that the civil service commission lacked jurisdiction to confirm the order of discharge. Since it had such jurisdiction, the weight and credibility of the evidence were not subject to review. We do not overlook that, upon the hearing in the district court, Fronsdahl testified as a witness in explanation of his possession of the goods in question. This explanation was that they had all been given to him by various persons. He also introduced the testimony of other witnesses in corroboration. Such evidence would have been very appropriate at the hearing before the civil service commission. It was not offered. It had no place in a hearing on the writ of certiorari in the district court. Though Section 4160 of the Code permits the introduction of evidence other than the certified return, such evidence must, however, have reference to the proceedings before the lower tribunal. The only issue upon the hearing in the district court was whether there was illegality or want

3. CERTIORARI : scope of writ and evidence receivable.

of jurisdiction in the action of the civil service commission. It was not open to the plaintiff to remain silent in the hearing before the commission, and then to prove his defense in a hearing in the district court upon a writ of certiorari. If it was incumbent upon him to produce such evidence at all, it was incumbent upon him to do so at the trial before the commission.

Finally, we may note that the criterion by which the civil service commission must be guided is set forth in Section 1056-a32(c), as follows:

"All persons subject to such civil service examination shall be subject to removal from office or employment by majority vote of such civil service commission for misconduct or failure to properly perform their duties under such rules and regulations as may be adopted by the council."

The scope and duty of the commission are quite fully considered in our recent cases of *Mohr v. Civil Service Commission*, 186 Iowa 240; *O'Donnell v. Civil Service Commission*, (Iowa) 173 N. W. 43 (not officially reported). See, also, *People v. Board*, 82 N. Y. 358, wherein it was held that intoxication was a sufficient ground to support the action of the board in confirming the discharge of a member of the fire department.

Upon the record before us, it was error to annul the order of the civil service commission. The judgment must, therefore, be reversed.—*Reversed and remanded.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.