## Poerio Appeal

*J. Frank Kelker, Jr.*, for appellant.

*T. A. Tenor*, for appellee.

SOHN, J., February 23, 1955.— James J. Poerio appeals from the action of Council of the City of Beaver Falls, in discharging him from his employment as a police officer. In the petition he alleges that on October 4, 1954, he was suspended for 10 days from October 5, to October 15, 1954. The notice to Poerio stated that the suspension was based on the charges of violation of the regulations of the police department and conduct unbecoming an officer. He was advised on October 11th that his suspension was to be effective until October 18, 1954, at eight p.m., when council would hold a hearing. He was informed in writing that the following charges would be considered: (1) Conduct unbecoming an officer on October 4, 1954;

(2) conduct in the City Building, October 5, 1954, at approximately 3:30 p.m.; (3) a course of conduct intentionally designed to deprive the city of useful services and continuous disregard of police regulations from the time of his appointment, and (4) inability or lack of inclination to make adjustment to duties of employment so as to render him unfit for police duty.

A stipulation was entered of record. Therein it is agreed by counsel that: (1) Poerio was a civil service employe as a patrolman and entitled to the protection of the civil service statutes and regulations; (2) the City of Beaver Falls is a third class city; (3) that Poerio received the following 10 days' suspension without pay for separate infractions of police regulations: (a) August 6, 1953, to August 15, 1953; (b) September 3, 1953, to September 12, 1953; (c) January 18, 1954, to January 27, 1954; (d) January 29, 1954, to February 7, 1954; (e) May 14, 1954, to May 23, 1954. On October 18, 1954, after hearing, council, in writing, informed Poerio that he was found guilty on the charge of a course of conduct intentionally designed to deprive the city of useful services and continuous disregard of police regulations from the time of his appointment, and on the charge of inability or lack of inclination to make adjustment to the duties of his employment so as to render him unfit for police duty. On the finding of these two charges, he was dismissed from the police force as of October 18, 1954. It is stipulated that the charges upon which the dismissal is based are an accumulation of the charges supporting the five 10-day suspensions and the sixth suspension under consideration at the hearing in which the order of dismissal was entered. The stipulations were filed by counsel on the assumption that the court could dispose of the case on the record.

Under the statute a hearing de novo is required. The Third Class City Law of June 23, 1931, P. L. 932,

sec. 4408, as last amended by the Act of June 28, 1951, P. L. 662, sec. 44, 53 PS §12198-4408, in part, provides:

"Any civil service employee aggrieved by the action of the council in . . . discharging him shall have the right to appeal . . . to the court of common pleas . . . and the court shall hear the charges made against him de novo. The issue before the court shall be whether the action of the council shall be affirmed or be modified in any respect or whether the charges should be dismissed."

Pursuant to the statutory direction, a hearing was held and testimony taken and this testimony is of record.

From the record we make the following factual conclusions:

1. James J. Poerio was, on October 4, 1954, a civil service employe working as a patrolman in the Police Department of the City of Beaver Falls, a third class city, in this county.

2. As such employe he was entitled to the benefits and assurances of the pertinent civil service statutes and regulations.

3. Jame J. Poerio was engaged in the performance of his duties as a police officer directing traffic at the intersection of Seventh Avenue and Eleventh Street, in Beaver Falls, Pa., on the evening of October 4, 1954.

4. About 8:40 p.m. on that date, Joseph M. Epstein, a businessman in the City of Beaver Falls for a period of 34 years, while waiting for a space where he could park his automobile along Seventh Avenue, stopped a vehicle operated by him in the western lane of two southbound traffic lanes on Seventh Avenue.

5. An operator of a vehicle which occupied a parking space approached his vehicle and he entered it and drove his vehicle from the space so occupied.

6. While Epstein's vehicle was stopped in the traffic lane, vehicles behind his were not able to proceed for a period of three to five minutes.

7. Traffic was heavy and a number of vehicles stopped and formed a line of vehicles extending for some distance to the rear of Epstein's vehicle in the western southbound traffic lane.

8. Thereafter, Epstein drove his vehicle into the parking space which had been vacated.

9. After Epstein parked his vehicle and alighted from it, Poerio approached Epstein and inquired why he had not moved when Poerio blew his police whistle.

10. A heated argument ensued, in the course of which Epstein referred to Poerio as a "no good policeman" and "a wise policeman", and touched him in the chest with two fingers.

11. A large number of people were passing by and a crowd assembled.

12. Poerio thereupon placed Epstein under arrest and informed him that he was charging him with disorderly conduct.

13. Poerio then took Epstein by the arm and pulled him toward Eleventh Street to a police call box where Poerio called for a police car and took Epstein to the police station.

14. At the police station Poerio searched Epstein, who had $300 in cash in his pocket. Epstein insisted on posting bail which Poerio refused, and he placed Epstein in a cell where he remained for one-half hour.

15. Subsequently when a friend of Epstein interceded, Epstein was permitted to post a forfeit of $27.50 and released from his cell.

16. When the matter was brought to the attention of the mayor of the City of Beaver Falls, the forfeit posted by Epstein was returned to him and no proceedings were had against Epstein.

17. On the following day, October 5, 1954, Poerio was suspended.

18. Subsequent to the suspension, at approximately 3:30 p.m., October 5, 1954, Poerio came to the police station in the City of Beaver Falls, and while discussing his suspension, he was loud and disorderly and created a disturbance which attracted the attention of others in the City Building.

19. Poerio used profane language and he referred to the mayor in vile and opprobrious language.

20. James J. Poerio had previously been suspended for 10-day periods by the Mayor of the City of Beaver Falls, on five occasions. On August 4, 1953, for conduct unbecoming an officer; August 27, 1953, for abusive and profane language; December 6, 1953, for reporting off from work alleging that he was ill when, in fact, he went hunting; January 16, 1954, for leaving his beat and riding in a police car, and on May 14, 1954, for being on his beat at night without a flashlight.

## Discussion

From a recital of the facts found by the court based on the evidence, it is apparent that the charge against the officer is amply sustained. No specific traffic violation was charged against Epstein. If, in fact, there was a violation of law or city ordinance it certainly was the type of violation justifying the posting of bail rather than placing Epstein in jail, particularly when he had on his person $300 in cash. Bail subsequently accepted was $27.50. It is to be noted that Poerio explains his conduct in placing Epstein in jail on the theory that the assistant chief of police directed him to put Epstein in jail for a half hour or so until he cooled off. In rebuttal, Merle Salyards, the assistant chief of police of the City of Beaver Falls, testified and denied that he directed Poerio to put Epstein

in jail. He testified that it was the policy of the police department to leave such matters to the arresting officer. This situation raises the only justification of the entire incident for the conduct of Poerio at the police station. The testimony of Poerio and Salyards creates a question of credibility, which must be resolved in deciding the issue in this case. We accept the testimony of Salyards in this regard. Consequently, we are satisfied that the action of Poerio was unwarranted and unbecoming an officer. His conduct on the next day was likewise subject to criticism. In police service, semimilitary discipline is to be encouraged and greater strictness of enforcement and severity of punishment is to be permitted: Caldwell v. Fairley et al., 363 Pa. 213. Police officers are vested with great power, their conduct in dealing with people must show a commensurate consideration for the rights of the public, especially those who may be charged with minor offenses.

One other question is presented in this case, and that is whether or not the court should consider the other suspensions in deciding this case. This appears to be a case of first impression in Pennsylvania. Under similar statutes in other jurisdictions, it has been held that if a specific charge is made and found to be true the record of the officer may be considered in fixing punishment. In Hughes v. Department of Public Safety of the City of St. Paul et al., 200 Minn. 16, 273 N. W. 618, the court said:

"If the service record of an officer is introduced in evidence, it may, however, be considered by the board in fixing punishment after it has found the charge to be true upon evidence other than his record: People ex rel. Butts v. MacLean, 60 Hun., 577, 14 N. Y. S. 77; People ex rel. Simermyer v. Roosevelt, 2 App. Div. 498, 37 N. Y. S. 1083; People ex rel. Morgan v. Roose-

velt, 5 App. Div. 328, 39 N. Y. S. 290; People ex rel. Fitzgibbons v. Roosevelt, 13 App. Div. 404, 43 N. Y. S. 73; People ex rel. O'Neill v. Roosevelt, 17 App. Div. 301, 45 N. Y. S. 260; Mayor of Medford v. Judge of Dist. Court, 249 Mass. 465, 144 N. E. 397; Fronsdahl v. Civil Service Comm., 189 Iowa, 1344, 179 N. W. 874."

We have not considered the other incidents in determining the charge against Poerio. After reaching a conclusion that the charge against Poerio is sustained by the evidence, we have considered the previous suspensions in determining what punishment is appropriate. We conclude that the action of Council of the City of Beaver Falls in dismissing James J. Poerio from his employment as a police officer in the City of Beaver Falls, should be affirmed.

## Conclusions of Law

1. The evidence offered in support of the charge against James J. Poerio is adequate to sustain the action by the Council of the City of Beaver Falls.

2. The action of the Council of the City of Beaver Falls in dismissing James J. Poerio from his employment as a police officer is affirmed.

3. Previous suspensions are admissible in evidence in fixing punishment after the court has concluded that the evidence supports the charge against appellant.

## Order

And now, to wit, February 23, 1955, after hearing de novo and consideration of the evidence in the case, it is ordered, adjudged and decreed that the action of the Council of the City of Beaver Falls, Pa., dismissing James J. Poerio from his employment as a police officer of the City of Beaver Falls be, and it is hereby affirmed.